## In re VITAMINS ANTITRUST LITIGATION.

### No. MC–3–02–017.

United States District Court,
S.D. Ohio,
Western Division.

March 27, 2003.

Thomas Patrick Whelley, II, Scott Lloyd Braum, Chernesky Heyman & Kress, Dayton, OH, Lee A. Freeman, Jr., Freeman, Freeman & Salzman, Chicago, IL, for Akey Inc.

Michael R. Shumaker, Jones, Day, Reavis & Pogue, Washington, DC, for Aventis Cropscience, USA, Inc.

## DECISION AND ENTRY SUSTAINING AKEY, INC.'S MOTION TO QUASH SUBPOENA (DOC. # 1) AND OVERRULING AVENTIS CROPSCIENCE USA INC.'S MOTION TO COMPEL PRODUCTION FROM AKEY, INC. (DOC. # 3); TERMINATION ENTRY

RICE, Chief Judge.

This matter is before the Court on Akey, Inc.'s ("Akey"), Motion to Quash Subpoena, served on it by Aventis CropScience USA Inc. ("Aventis") (Doc. # 1), and Aventis' Motion to Compel Production from Akey (Doc. # 3). Aventis is a defendant in a multi-district litigation case pending in the District Court for the District of Columbia, captioned *In re: Vitamins Antitrust Litigation*, MDL No. 1285, Misc. No. 99–0197 (herein, "antitrust litigation").

The basic facts are not in dispute. Akey manufactures vitamin products for blending with animal feed. It is the successor-in-interest to Carl S. Akey, Inc. ("CSAI"), which sold substantially similar vitamin products to, among other customers, PFFJ, Inc. ("PFFJ"). CSAI was PFFJ's sole supplier of vitamin products, and in developing and manufacturing these products, it used vitamins and other vitamin products purchased from, among others, Aventis. The underlying antitrust litigation, consolidated as it has been in the District Court for the District of Columbia, arose after several of the world's largest vitamin manufacturers admitted that they had engaged in anti-competitive price fixing beginning in the late 1980s and continuing through the 1990s. Several of the defendant vitamin manufacturers are direct competitors of Akey in the vitamin product market. Both PFFJ and the original principals of CSAI are plaintiffs in the antitrust litigation, but Akey is not; when the original principals of CSAI sold their other interests therein to Akey, they retained their interest in the antitrust litigation, and assumed a new corporate name, CSA Nutrition, Inc.

■ For its part, PFFJ sued Aventis on an "indirect seller" theory of liability, alleging that, as a downstream purchaser (or indirect purchaser) of vitamins originating with Aventis, it was harmed by the anticompetitive price fixing in which Aventis engaged due to the fact that it purchased vitamin products from CSAI. In other words, it has alleged that it was harmed by Aventis' overcharging of CSAI when CSAI, in turn, passed along the overcharge to it. Its cause of action against Aventis arises under the antitrust laws of the State of Arizona only, because downstream or indirect purchasers lack standing to sue under the federal antitrust laws. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). In its effort to defend against PFFJ's claim, Aventis served Akey with the subpoena at issue, seeking certain information and records from Akey, as the successor to CSAI, for the purported purpose of determining whether PFFJ was, in fact, subjected to any flow-through overcharge it may have charged CSAI in the first instance.

Simply stated, what Aventis is seeking from Akey are records detailing the unit-by-unit composition of each vitamin product that CSAI sold PFFJ, which of those units were purchased from Aventis,

CSAI's costs relating to those units purchased from Aventis, and the prices CSAI charged PFFJ, calculated on a unit-by-unit basis, and taking into account any other factors that affected its pricing methodology, such as overhead costs and the like. (*See* Doc. # 1 at Ex. A.) This information, Aventis contends, is necessary to defend against PFFJ's claim that it was harmed by Aventis' having overcharged CSAI in the first instance.

■ Though it does not disagree that non-parties are subject to the subpoena power of the Court, as contemplated by Rule 45 of the Federal Rules of Civil Procedure, Akey argues that the subpoena at issue herein should be quashed, because it will subject it to an undue burden and will require the disclosure of trade secrets for which Aventis has no substantial need. *See* Fed.R.Civ.P. 45(c)(3)(A)(iv) & (B)(i). Thus, in responding to Aventis' subpoena, it objected to all but a single request, regarding documents it had already provided PFFJ. (*See* Doc. # 1 at Ex. C, Response to Request No. 14.) In response to interrogatories, Akey also provided a list of vitamins and vitamin products CSAI had purchased from its various suppliers, including Aventis. (*See* Aventis' Motion to Compel (Doc. # 3) at Ex. C, Supplemental Response to Combined Interrogatories Nos. 5–6.) Through discovery conducted directly with PFFJ, Aventis also obtained a list of all the vitamins and vitamin products that PFFJ had purchased from CSAI during the relevant time period, and PFFJ's purchase price of same. (*See id.* at Ex. D.)

Akey's primary concern regarding its trade secrets is that they will fall into the hands of those defendants which are its direct competitors. It also contends that many of records Aventis seeks cannot be produced, because such are not in its possession or the collective memory of its current employees. With regard to this latter contention, Akey's President and CEO states in his affidavit that while it still sells many of the same or similar vitamin products which CSAI sold to PFFJ, it no longer produces, sells or retains records on certain others, and has no means of determining CSAI's pricing methodology. (Armstrong Aff., Doc. # 1 at Ex. B, ¶ 5.) This latter concern deserves but a brief comment. Aventis has stated that it is not requesting that Akey manufacture or re-create any records which it does not already and actually have in its possession, custody or control. (*See* Doc. # 3 at 4.) It does argue, however, that the fact that Akey may not be able to produce all of the information it seeks should not be used as an excuse not to produce that which it does possess or have in its custody or control. The Court agrees with this rationale, and focuses herein only on that information requested in Aventis' subpoena which Akey does actually have in its possession, custody or control. The fact that Akey might be unable to provide certain records, such as how CSAI determined the prices at which it sold its vitamin products to PFFJ, does not necessarily mean that it has no obligation to provide other relevant information.

Aventis does not question that the information it is seeking is trade secrets, but notes that such information is not exempted from discovery pursuant to a subpoena. Rule 45(c)(3)(B) states that if a subpoena "requires disclosure of a trade secret ... the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is ad-

dressed will be reasonably compensated, the court may order appearance or production only upon specified conditions." Aventis contends that Akey will be fully protected by an existing protective order currently in effect in the antitrust litigation, a copy of which was attached to its subpoena (and attached herein to Exhibit A of its Motion to Compel). The subpoena expressly stated that the confidentiality of the information produced in response thereto would be protected by the protective order, which appears to apply to parties and non-parties alike in the antitrust litigation.

At present, this Court need not scrutinize all of the particulars of the protective order; it suffices for now to note that it allows a party or non-party to designate sensitive information as "confidential," and extremely sensitive information, such as trade secrets, "confidential and lawyers only." In the case of the latter, the dissemination of such would be limited to counsel, the court, consulting and expert witnesses and any other individual designated by the party or non-party producing the information. The protective order also allows a party to challenge any such designation.

Akey is not unmindful of the protective order, but it considers it either irrelevant or insufficient to protect its interests. Regarding its latter argument, it contends that as a non-party, its interests are unrepresented in the antitrust litigation, such that it will be left exposed to severe economic injury if the parties choose not to enforce the terms of the protective order strictly. Furthermore, appealing more to emotion than to law, it argues that the defendants therein who are its direct competitors, some of whom have already admitted to engaging in anti-competitive conduct, simply cannot be trusted to honor the protective order.

As for its argument that the protective order is irrelevant, Akey's point is that Aventis has not demonstrated a "substantial need" for the information it seeks, and that the sufficiency of the protective order therefore need not be considered. In support of this point, it makes two sub-arguments: *first*, that the burden is on PFFJ to adduce facts demonstrating how Aventis is liable to it under the antitrust laws of Arizona, as an indirect seller, and that until PFFJ can do that, Aventis itself need not adduce anything; *second*, that Aventis has filed a motion to dismiss PFFJ's claims, and that if it is successful, there will not be a need for this Court to enforce the subpoena. In other words, it argues that Aventis' subpoena is premature, such that, at this point in time, Aventis cannot show a substantial need for the trade secrets it seeks.

In response to Akey's argument that its interests will be left unprotected in the antitrust litigation, Aventis states that the protections of the protective order have been utilized and relied upon by other parties and non-parties alike, itself included, and that its fear that the protective order is inadequate is unjustified, as are its characterizations of the rectitude, or lack thereof, of several of the defendants. It mentions further that counsel for Akey is also counsel for CSA Nutrition, Inc., and that because the latter is an actual plaintiff in the antitrust litigation, Akey's interests would also appear to be represented. Finally, it argues that whether the initial burden of going forward is on PFFJ or whether its motion to dismiss might be granted at some future date is irrelevant.

For four reasons, considered together, the Court will sustain Akey's Motion to Quash and overrule Aventis' Motion to Compel. *First*, it seems clear that what Aventis is requesting constitutes trade secrets, and that these trade secrets are the

lifeblood of Akey's financial well being. *Second,* the fact that certain of the defendants in the antitrust litigation are Akey's direct competitors only heightens the Court's first concern. *Third,* this Court has no enforcement power over the extant protective order, and thus would be unable to protect Akey's interests were its terms to be breached, a consideration which gives the Court some pause, in light of its first two concerns. *Fourth,* given that Akey's records will be irrelevant to the interests of Aventis, insofar as its defense against the claim of PFFJ is concerned, should its motion to dismiss be granted, the Court believes that the wise course is to nip any potential economic harm to Akey in the bud, by not enforcing the subpoena *at this time.*

Aventis cites *Illinois Brick, supra,* in setting forth the rationale for why it is entitled to the information it has sought through the subpoena at issue. It is not to be overlooked, however, that the theory of antitrust liability that the Supreme Court examined in that case, to wit, that of an "indirect seller," 431 U.S. at 729–36, 97 S.Ct. 2061, was one which it ultimately held was not tenable under the federal antitrust laws. *Id.* at 736, 748, 97 S.Ct. 2061.[1] While this Court need not, and does not, examine the viability of that theory of liability as a matter of Arizona antitrust law, it is harmless enough to note that there is at least a reasonable chance that the District Court for the District of Columbia will follow the federal precedent in ruling on Aventis' motion to dismiss. Furthermore, while Aventis has argued that there is no need to quash its subpoena simply because it has a dispositive motion

pending, it has not notified this Court that its defense against PFFJ's claim will be prejudiced should it be denied the information it seeks in its subpoena until after its motion has been ruled upon.

The parties herein gave indefinite estimates of when a ruling is expected on that motion, but the Court, having perused the voluminous antitrust litigation docket, available at http://pacer.dcd.uscourts.gov/,[2] understands that no such ruling has been issued to date. Of particular interest, however, is the fact that the Arizona Supreme Court had arguments scheduled for Thursday, March 20, 2003, on this exact issue, to wit: whether the rationale employed by the Supreme Court of the United States in *Illinois Brick* holds true as a matter of Arizona antitrust law. *See* http://www.supreme.state.az.us/clerk/OA—03202003.pdf (arguments scheduled for *Bunker's Glass Co. v. Pilkington,* CV–02–0140–PR, and *Gray v. Philip Morris USA,* CV–02–0175–PR). This Court suspects that it may very well be that the District Court for the District of Columbia is delaying its ruling on Aventis' motion to dismiss until the Arizona Supreme Court issues its ruling on the matter.

Whatever the case may be with respect to the timing of a decision on Aventis' motion to dismiss in the antitrust litigation, the Court agrees with Akey that the subpoena at issue in this case was issued prematurely, which, of course, is not to say that it lacks merit. Because Aventis has not notified this Court that a failure to enforce its subpoena *at this time* will prejudice its defense against PFFJ in the antitrust litigation, the Court will sustain Akey's Motion to Quash and overrule

---

1. Aventis also cites *In re Cardizem CD Antitrust Litig.,* 200 F.R.D. 326 (E.D.Mich.2001), but that case is irrelevant, as it involved a question of Michigan antitrust law. The court noted in that case that Michigan had clearly

rejected the holding in *Illinois Brick.* 200 F.R.D. at 330 n. 3.

2. This web site requires an account and password in order to access records therein.

Aventis' Motion to Compel. Be that as it may, should the District Court for the District of Columbia overrule its motion to dismiss, Aventis will be welcome to have a new subpoena issued on its behalf, seeking everything that it seeks in the one currently at issue. Although the first three concerns expressed above by the Court, regarding the nature of the information sought in the subpoena at issue, are serious ones, they would not necessarily be independently dispositive, should Aventis have issued in its name a new subpoena from this Court at the appropriate time. Should it be deemed by the District Court for the District of Columbia (whether or not it stays its decision until after the Arizona Supreme Court has issued a decision on the *Illinois Brick* issue) that PFFJ's antitrust claim has merit, and should Aventis have issued in its name a new subpoena, the Court will take a fresh look at the arguments raised herein (along with any others which the parties might proffer, presuming the parties will raise arguments).

For the reasons stated, the Court shall SUSTAIN Akey's Motion to Quash Subpoena (Doc. # 1) and OVERRULE Aventis' Motion to Compel Production from Akey (Doc. # 3).

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.